

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable John H. Winters, Executive Director,
State Department of Public Welfare,
Austin 3, Texas

Dear Sir:                     Opinion No. O-7064
                              Re:  Residence requirements for
                                   former recipients of Public
                                   Assistance

     This acknowledges receipt of your letter of April 26,
part of which reads as follows:

    "We would like to submit for your consideration
and opinion some fact situations wherein we are in
need of an interpretation of the residence provisions
of the law applicable to former recipients of old age
assistance, aid to the needy blind, or aid to depen-
dent children.

    ". . .

    "1.  Mr. A, a former recipient of assistance,
resided in the State for a sufficient
period of time to qualify for assistance
in 1938.  His grant was denied on April
14, 1941 because he had been out of the
State for a period of three months.
In December, 1940, Mr. A went to Cuba for
the purpose of disposing of mining property.
When he left the State he intended to re-
turn immediately upon completing the trans-
action of his business.  While he was out
of the State he maintained his home in
Texas, and some of his relatives continued
to live in the home.  While in Cuba he ob-
tained a job with the United States Govern-
ment and remained in Cuba with this employ-
ment until December, 1945.  It was established
that he had no intention of abandoning his
Texas residence and accepted the job for
the "duration" with intentions of returning
to the State.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"If Mr. A is required to remain in the State for twelve (12) months continuously after his arrival in the State, that is, until December, 1946, he will have fulfilled the one year residence requirement immediately preceding the filing of the application. Had he been permitted to reapply upon his return to the State he would have had sufficient residence to comply with the five (5) year out of the nine (9) year residence requirement. By requiring him to remain in the State for one full year, that is, until December, 1946, he will have at the same time lost one year necessary to comply with the first period of time required for residence, and each year as he gains a year's residence he loses a year out of the five (5) year period which means that he has to actually remain in the State for five (5) years continuously. In other words, he would not be eligible until December, 1950.

"2. Mrs. Y, a former recipient of old age assistance, was a lifelong resident of the State of Texas. She was receiving assistance until August 1, 1939. In 1939 her daughter, who was a resident of Omaha, Nebraska, notified her of her illness. Our recipient went to Omaha in order to help care for the daughter until she had recovered. When the recipient left the State she had no intention of abandoning Texas residence but she notified us of her visit and her intention to return. She had never been out of the State until she left in 1939. When this former recipient returned to the State of Texas in January, 1946, she reapplied for assistance, and at that time stated that her daughter had kept her in Nebraska against her wishes having explained to her that the relative with whom she formerly lived did not want her and had intercepted her mail so that she had no communication from the Texas relative.

"This former recipient had been out of the State continuously from August 1939 until January 1946. Therefore, she not only will have to meet the residence requirement for the one year period, but she will have to be physically present in the State for a substantial portion of the five year period which will mean that, under the present policy, whe cannot be reinstated until January 1951.

"Is Section 41 of the Public Welfare Act flexible enough that the Department might liberalize its policies so as to permit the reinstatement of these people immediately upon their return to the State?

"In view of the provision in the Welfare Law instructing the Department to construe the Law liberally, is it not possible for the Department to examine the factors in the individual cases similiar to these and make its decision in accordance with Section 41 of the Public Welfare Act without having to consider the residence requirements for a new applicant? In other words, do you construe Section 41 of the Public Welfare Act as permitting the State Department of Public Welfare to make flexible rules and regulations regarding residence requirements of former recipients without respect to the provisions relative to the residence requirements for original applicants?

"Your consideration and opinion will be greatly appreciated."

We believe that our Opinion No. O-4494, of which you have a copy, answers both of these fact situations. We quote from Page 3 of this Opinion:

"Applying these principles to the fact situation presented, it is our opinion that the applicant does not meet the requirements of 'actual residence' . . . The applicant must be physically present in the state for a substantial part of the two time periods specified in the law irrespective of the reasons for her absence or her intention to return." (Emphasis added)

In both these situations the applicants have not been physically present for any part of the time periods, and their reasons for absence or intention to return make no difference.

Article 695c, sections 12 and 20 provide in part as follows:

Sec. 12. "Assistance shall be given under the provisions of this Act to any needy blind person who:

"(3) Who has resided in this State for five (5)

years during the nine (9) years immediately preceding the date of application, and who has resided in this State continuously for one (1) year immediately preceding the date of application; .."

Sec. 20. "Old Age Assistance shall be given under the provisions of this Act to any needy person:

"(3) Who has resided in the State of Texas for five (5) years or more within the last nine (9) years preceding the date of his application for assistance and has resided in the State of Texas continuously for one (1) year immediately preceding the application; .."

Article 3, Section 51b, Texas Constitution, provided in part as follows:

". . . provided further that the requirements for length of time of actual residence in Texas shall never be less than five (5) years during the nine (9) years immediately preceding the application for old-age assistance and continuously for one (1) year immediately preceding such application."

Article 3, Section 51a, Texas Constitution, which amended Section 51b in 1945, provides in part as follows:

"The Legislature shall have the power, by general laws to provide, subject to limitations and restrictions herein contained, and such other limitations, restrictions and regulations as may by the Legislature be deemed expedient for assistance to, and for the payment of assistance to:

"(1) Needy aged persons who are actual bona fide citizens of Texas and who are over the age of sixty-five (65) years; provided that no such assistance shall be paid to any inmate of any State supported institution, while such inmate, or to any person who shall not have actually resided in Texas for at least five (5) years during the nine (9) years immediately preceding the application for such assistance and continuously for one (1) year immediately preceding such application; provided that the maximum payment per month from State funds shall not be more than Twenty Dollars ($20) per month.

"(2) Needy blind persons who are actual bona
fide citizens of Texas and are over the age of
twenty-one (21) years; provided that no such as-
sistance shall be paid to any inmate of any State
supported institution, while such inmate, or to
any person who shall not have actually resided
in Texas at least five (5) years during the nine
(9) years immediately preceding the application
for such assistance and continuously for one (1)
year immediately preceding such application..."

It is clear from the foregoing that both the former
and present Constitutional provisions and Article 695c set
up certain minimum residence requirements which must be met be-
fore any assistance can be given. Until these minimum require-
ments are met, the State Department has no discretionary powers
under Section 41 of Article 695c, and Section 35 of that Article
would not operate to reduce the minimum requirements set up by
the Constitution and Statute.

After such minimum residential requirements have been
met, the State Department has considerable discretion under
Section 41, as to whether a person is temporarily absent or has
moved out of the State, because these are plainly matters of
fact for that Department to pass upon.

We, therefore, hold that the applicants under the fore-
going facts are not entitled to assistance and cannot receive
such until residential requirements are complied with, and that
Sections 35 and 41 of Article 695c cannot reduce said minimum
requirements of the Constitution and Statutes.

We trust that the foregoing fully answers your ques-
tion.

Yours very truly

By /s/ Richard H. Cooke
Assistant

Approved Jul 1, 1946
Cole Speer
Acting Attorney General of Texas

By /s/ William E. Stapp

Approved: Opinion Committee
By  BWB
Chairman

RHS:JMc;djm